No. 22-184

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
————————————

IN RE: MARRIOTT INTERNATIONAL, INC.
CUSTOMER DATA SECURITY BREACH LITIGATION
————————————

On Petition for Permission to Appeal
from the United States District Court for the District of Maryland,
MDL No. 19-md-2879 (Grimm, J.)
————————————

RESPONDENTS' ANSWER IN OPPOSITION TO
PETITION FOR INTERLOCUTORY APPEAL PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 23(f)

————————————

Amy E. Keller
**DICELLO LEVITT
GUTZLER LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Tel. 312-214-7900

James J. Pizzirusso
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, D.C. 20006
Tel. 202-540-7200

Andrew N. Friedman
**COHEN MILSTEIN SELLERS
&TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202-408-4600

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road,
Bldg. 14, Suite 230
Atlanta, GA 30305
Tel: 404-320-9979

Jason Lichtman
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212-355-9500

Timothy Maloney
**JOSEPH GREENWALD
& LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100

James Ulwick
**KRAMON & GRAHAM PA**
1 South Street, Suite 2600
Baltimore, MD 21202
Tel: 410-347-7426

Megan Jones
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: 415-633-1908

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243

Daniel Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel: 949-720-1288

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY 10119
Tel: 212-946-9300

Veronica Nannis
**JOSEPH GREENWALD &
LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200

June 14, 2022

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Respondents make the following disclosure:

- Respondents are all natural persons.

- The publicly held corporations or entities that have a direct financial interest in this litigation are identified in Petitioners' disclosures, and quoted in pertinent part below:

> "Petitioner Marriott International, Inc. certifies that Marriott International, Inc. (NASDAQ: MAR) is a publicly owned company and that no public corporation or entity owns 10% or more of Marriott International, Inc.'s stock."

(Case 22-184, Marriott Pet. at i).

> "Accenture LLP certifies that it is not a publicly held corporation and no publicly held corporation owns more than ten percent of its stock. Accenture LLP is a wholly owned subsidiary of Accenture plc, a publicly traded corporation. Accenture is not aware of any publicly held corporation that owns more than ten percent of Accenture plc stock."

(Case 22-181, Accenture Pet. at C-1).

- This case does not arise out of a bankruptcy proceeding.

- This is not a criminal case in which there was an organizational victim.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND ......................................................................5

LEGAL STANDARD..............................................................................7

ARGUMENT .......................................................................................8

    I.     Marriot does not satisfy the Rule 23(f) factors ........................................8

    II.    The District Court's decision that the class waiver
          defense was a common issue that could be addressed at the
          merits stage of litigation was not manifestly erroneous............................9

    III.   The District Court's finding that the class is ascertainable is
           not manifestly erroneous and does not warrant immediate review.........11

    IV.   The District Court's Order complies with *Daubert* and
          *Comcast* and does not reflect a substantial weakness or
          manifest error model...............................................................14

          A. Marriott has not shown Dr. Prince's proposed methodology
            violates Comcast or is unreliable under Daubert ...............................16

    V.    Defendants failed to identify a manifest error or substantial
          weakness in the District Court's limited issue class
          certification order ...................................................................20

CONCLUSION....................................................................................21

CERTIFICATE OF COMPLIANCE............................................................22

CERTIFICATE OF SERVICE ..................................................................23

## TABLE OF AUTHORITIES

**CASES**                                                                     **Page(s)**

*Adams v. Mills*,
    286 U.S. 397 (1932) ....................................................................................3

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ..................................................................19

*Central Wesleyan College v. W.R. Grace & Co.*,
    6 F.3d 177 (4th Cir. 1993) .......................................................................20

*Chado v. Nat'l Auto Inspections, LLC*,
    No. CV 17-2945, 2019 WL 1981042 (D. Md. May 3, 2019) ....................13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...........................................................................3, 14, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ................................................................................14

*Earl v. Boeing Co.*,
    339 F.R.D. 391 (E.D. Tex. 2021) ..........................................................9, 10

*EQT Production Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ..............................................................12, 13

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (2003) .................................................................................12

*In re Delta Air Lines*,
    310 F.3d 953 (6th Cir. 2002) ...................................................................15

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ...........................................................................15, 17

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ..............................................................1, 7, 20

*McKiver v. Murphy-Brown, LLC*,
    980 F.3d 937 (4th Cir. 2020) ...............................................................15, 17

*Nease v. Ford Motor Co.*,
    848 F.3d 219 (4th Cir. 2017) .......................................................................17

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 20000) ...........................................................*passim*

*S. Pac. Co. v. Darnell-Taenzer Co.*,
    245 U.S. 531, (1918) ...................................................................................3

*Spotswood v. Hertz Corp.*,
    No. CV 16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019) ........................13

## **RULES**

Federal Rule of Civil Procedure 23 ................................................. *passim*

## **INTRODUCTION**

Marriott's Rule 23(f) petition should be denied. This Court's precedent requires "careful and sparing use of Rule 23(f)," recognizing the District Court's "institutional advantage" in "managing the course of litigation," as well as this Court's "limited capacity" for interlocutory review. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001). This is particularly true here, where the District Court issued a thorough, fact-bound 73-page class certification order that explicitly calls for additional discovery and expert reports related to Plaintiffs' damages theories. Marriott does not seriously contend that the decision is dispositive or that it implicates unsettled or novel questions about the meaning of Rule 23 that are likely to matter to other cases. Moreover, Marriott concedes that the District Court stands ready to issue another class certification order that may modify (or even decertify) the classes. Therefore, even if Marriott's petition raised potential errors now (it does not), it would be premature and unfit for an interlocutory appeal.

Marriott hangs its entire petition on the claim that the certification order is "manifestly erroneous." But this case does not come close to the "extreme case[]" in which that high bar is satisfied—a case in which "decertification is a functional certainty." *Lienhart*, 255 F.3d at 145. Marriott ultimately fails to show that the District Court abused its broad discretion, much less that the court's certification order was "manifestly erroneous."

Marriott's lead argument is that the District Court manifestly erred by deferring decision on the merits of one of Marriott's common defenses until a later stage—the applicability of a purported contractual class-action waiver. Marriott cites no published case that requires this state-law issue to be decided at class certification. Nor does anything in Rule 23 require that result. Moreover, although Marriott will later have the opportunity to make its argument to the district court, Marriott cannot show that: (1) it has preserved the argument (having failed to develop it for years); and (2) the clauses apply and are enforceable under state law. And even if Marriott could make both showings, this is a merits issue under Rule 23—and a common one at that—not an issue that requires resolution in an interlocutory appeal at class certification. Rule 23(f) is not a vehicle for piecemeal appeals about the sequence for addressing the enforceability and potential waiver of common-law contractual provisions. Just the opposite: "Rule 23(f) should not be a vehicle for courts of appeals to micro-manage complex class action as it unfolds in the district court." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

Marriott's next "manifestly erroneous" argument is that the classes are not ascertainable. But the District Court spent seven pages conducting a "fact-specific analysis," and concluded that the classes are ascertainable because they are defined by objective criteria and determining class membership in the claims process will be

administratively feasible. App. 11-18.[1] It held that Marriott's own records provide a "strong starting point" for identifying class members, and should it be necessary for proposed class members to provide additional evidence of class membership, that evidence could take the form of other records or sworn affidavits. Marriott's arguments about class membership ring especially hollow because the issue does not affect its liability; it only impacts *who* is entitled to receive damages for a particular claim. It has been the law for nearly a hundred years that "the fact of subsequent reimbursement" is not "of any concern to the wrongdoer[]." *Adams v. Mills*, 286 U.S. 397, 407 (1932). And the District Court is always free to revisit its conclusions at a later stage—including its view that proof showing no reimbursement is necessary in the first place. *See, e.g.*, *S. Pac. Co. v. Darnell-Taenzer Co.* 245 U.S. 531, 533-34 (1918) ("[The] general tendency of the law, in regard to damages at least, is not to go beyond the first step," so where "plaintiffs suffered losses … when they paid," their "claim .... accrued at once," and the law "does not inquire into later events [such as reimbursement].").

Finally, Marriott argues that plaintiffs' expert's damages model violates *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), which requires that "[a] plaintiff's damages case must be consistent with its liability case." *Id.* at 35. Plaintiffs satisfy *Comcast* because, as the District Court noted, the same model will be used in the

---

[1]        "App." refers to Marriott's Appendix, No. 22-184.

same way to determine damages for every class member. Marriott's argument is really that the District Court misapplied *Daubert*—an argument outside the scope of Rule 23(f). Moreover, the District Court's extensive *Daubert* analysis explained why plaintiffs' damages model is sufficiently reliable for class certification. App. 47-52. That fact-sensitive holding does not warrant the extraordinary remedy of an interlocutory appeal.

Finally, the class certification order explicitly contemplates that Marriott will produce additional discovery relevant to both of Plaintiffs' damages theories. As to the "benefit of the bargain" theory, the *Daubert* order contemplates Marriott producing its entire customer database to Plaintiffs' expert, Plaintiffs' expert running his calculations for the class and submitting a supplemental report, Defendant's expert submitting her own supplemental report, and then "limited briefing on the admissibility of Dr. Prince's overpayment damages" before a "final ruling." *Daubert* Order at 5-6. As to Plaintiffs' "loss of inherent value" theory, the class certification order denied that theory *without* prejudice and noted that there was an "undeveloped" record about Marriott's own valuation of customer data. Class Cert. Order at 33-34. Following a status conference, the parties are currently in the process of briefing what discovery Plaintiffs will be entitled to as the case proceeds. ECF No. 1035. Thus review is premature. *Prado-Steiman*, 221 F.3d at 1273 ("We should err, if at all, on the side of allowing the District Court an opportunity to fine-tune its

class certification order rather than opening the door too widely to interlocutory appellate review.").

## **FACTUAL BACKGROUND**

Marriott acquired Starwood Hotels and Resorts ("Starwood") in September 2016. App. 2. From at least July 2014 to September 2018, hackers had access to Starwood's guest information database, the New Data Storage database ("NDS"). App. 3. The hackers exported customers' personally identifiable information. *Id*. On September 8, 2018, Marriott discovered the breach when its long-time security consultant, Accenture, reported an anomaly pertaining to the NDS. *Id*. The breach impacted approximately 133.7 million guest records associated with the United States. *Id*.

Plaintiffs-Respondents are consumers who provided their PII to Marriott to stay at a Starwood property or use Starwood's services before the data breach. *Id*. Beginning in December 2018, Plaintiffs filed suit alleging that Marriott, its predecessor (Starwood), and Accenture are liable for the data breach under theories of contract, tort, and breach of statutory duties. App. 3. With the support of all parties, these cases were consolidated pursuant to multi-district litigation rules in the District of Maryland. Marriott supported transferring the cases to a single MDL because "[t]he related actions all arise out of, and share fact questions concerning the same data security incident." App. 114. Marriott also noted that the MDL Panel

consistently determined that "actions arising out of the same cybersecurity incident present common fact questions." App. 117. On July 12, 2021, Plaintiffs moved to certify thirteen damages classes and subclasses under Rule 23(b)(3), various liability issues under Rule 23(c)(4), and a class for injunctive or declaratory relief under Rule 23(b)(2).

On May 3, 2022, in a 73-page opinion, the District Court held that Plaintiffs satisfied Rule 23's requirements and certified select 23(b)(3) classes and 23(c)(4) classes, denied certification of other classes based upon Michigan law, and denied, without prejudice, the loss of market value theory classes and injunctive class. App. 70-72. The District Court redefined Plaintiffs' damages classes by limiting them to those who bore the economic burden for hotel stays. App. 9-11. The District Court also observed that "Defendants will raise further challenges to the class representatives' standing," but such challenges should "wait until the summary judgment stage." App. 7. The District Court concluded that Plaintiffs have satisfied the objective criteria component because "[n]either the originally proposed class definitions nor the court-modified class definitions rely on subjective terms." App. 12. The District Court concluded that "Plaintiffs have satisfied the ascertainability requirement" because "an individual's very presence in [Marriott's] database indicates their membership in the class." App. 14. Furthermore, membership is subject to verification and any gaps or outdated information may be filled with

Marriott's current customer data. App. 14-15. The District Court considered, and rejected, Defendants' argument that there is no way to identify those who bore the economic burden. App. 15-18. The District Court acknowledged a review of individual files would be required, but that such review was "administratively feasible and not the kind of administrative review that would preclude ascertainability." App. 17.

## LEGAL STANDARD

This Court adopted the Eleventh Circuit's five-factor test for determining whether to grant a Rule 23(f) Petition. It considers: (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate. *Lienhart*, 255 F.3d at 144-46 (citing *Prado-Steiman*, 221 F.3d at 1274-76).

The second factor, substantial weakness, is "viewed in terms of the likelihood of reversal under an abuse of discretion standard, operates on a 'sliding scale' in conjunction with the other factors." *Id.* at 145. Only "[i]n extreme cases, where decertification is a functional certainty," may this factor "alone suffice" for

immediate review. *Id.* Otherwise, "a commensurately stronger showing on the other factors is necessary." *Id.* The "District Court's certification decision must be manifestly erroneous and virtually certain to be reversed on appeal." *Id.*

Rule 23(f) appeals are "inherently disruptive, time-consuming, and expensive," and thus are "generally disfavored." *Prado-Steiman*, 221 F.3d at 1276. The test is designed to encourage "restraint in accepting Rule 23(f) Petitions," insisting that the petitioner show a truly "compelling need for resolution of the legal issue sooner rather than later." *Id.* at 1274.

## ARGUMENT

### I. Marriott does not satisfy the Rule 23(f) factors.

Marriott fails to meet the heightened standard for immediate review under any of the five Rule 23(f) factors. *First*, its Petition does not raise any issues that are likely dispositive of the case. *Second*, it does not identify any "substantial weakness" in the court's thorough analysis. *Third*, it does not raise any unsettled questions pertaining to the application of Rule 23. For the fourth and fifth factors, as detailed above, the District Court is permitting additional discovery and expert reports related to Plaintiffs' damages theories as the case progresses. This will lead to renewed class certification briefing. Accordingly, Marriott's petition is premature and granting interlocutory review would only disrupt the District Court's proceedings. The time for review, if at all, is after the class certification order is final. *Prado-Steiman*, 221

F.3d at 1273 ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits. That power is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.").

## II.    The District Court's decision that the class waiver defense was a common issue that could be addressed at the merits stage of litigation was not manifestly erroneous.

The District Court did not manifestly err when it considered Marriott's purported class action waiver defense and concluded that the defense can be resolved by a classwide basis using common evidence, without creating Rule 23 typicality, adequacy, or predominance issues. App. 25 n.26. The Court likewise concluded that arguments related to Marriott's waiver of this argument are common and will apply to all class members, further supporting certification. *Id.* This is a sound application of Rule 23. The District Court correctly held that these issues should be addressed at the merits stage, "when all discovery is complete." App. 25 n.26.

Marriott summarily argues that "the class waiver issue is not a merits issue, and the time to resolve it is at class certification," Pet. at 15, but does not cite a single published case that supports its position. The only published opinion upon which Marriott relies, *Earl v. Boeing Co.*, 339 F.R.D. 391 (E.D. Tex. 2021), supports the District Court's application of Rule 23 and its finding that the waiver's enforceability

may be resolved on a classwide basis at the merits stage. *Id.* at 441. Marriott fails to explain how the court erred at all in its application of Rule 23 to the common law contractual class-action waiver issue, let alone manifestly so. And it did not. This is not a case where a doubtful certification ruling might compel a party to abandon a meritorious claim or defense before trial, nor does it involve unsettled legal questions that would contribute to the progress of complex litigation and the orderly development of the law. *Prado-Steiman*, 221 F. 3d at 1272. Taking into account the District Court's discretion in implementing Rule 23 and the deferential standard of appellate review, Marriott has not satisfied the high burden of demonstrating that the "district court's ruling on class certification is questionable." *Id.*

Finally, this case is an especially poor candidate for Rule 23(f) review because the District Court noted that "Plaintiffs raise a strong argument that Defendants have waived their right to enforce the class action waiver. Aside from a one-time, boilerplate affirmative defense, Defendants litigated this case for more than 31 months before asserting that Plaintiffs are subject to a class waiver. Defendants did not raise it as part of the bellwether negotiation process, address it in dozens of meet-and-confer and scheduling conferences, or raise it as part of any motion practice [prior to Defs.' Opp'n]." App. 25 n.26 (citations omitted).[2] The District Court then

---

[2]    Given Defendants' dalliance in raising this issue sooner, their protestations that the District Court's decision "imposes exorbitant burdens" rings hollow. Pet. 14.

correctly concluded that it need not rule on the issue at this time. *Id*. This decision was not manifestly erroneous. Because the District Court properly deferred ruling on the class waiver issue, this Court should deny the Petition.

**III.      The District Court's finding that the class is ascertainable is not manifestly erroneous and does not warrant immediate review.**

Marriott argues that the District Court's narrowing of the class definition "created a fatal ascertainability problem." Pet. 16-17. Not so. Far from being "manifestly erroneous," the District Court's analysis followed the procedures prescribed by the courts, acted within its discretion in applying them to the record before it, and is not the type of analysis that a circuit court should review for an abuse of discretion. The District Court did not arrive at its decision lightly. It spent seven pages analyzing the facts related to class membership and specifically considered Marriott's ascertainability and administratively feasible arguments. App. 11-18. Specifically, it considered sources of information such as Marriott's NDS database, class member self-certification, due process rights, and Marriott's ability to challenge proof used to demonstrate class membership, concluding that while the class size is large, "any review is administratively feasible and not the kind of administrative review that would preclude ascertainability." App. 17.

Marriott's self-serving statements about whether its NDS database contains information regarding whether a customer was reimbursed is a merit-based, fact-intensive matter best suited for the District Court at this stage (and following the

11

discovery the District Court contemplated) and not interlocutory review. Presently, Marriott has objected to producing its NDS database for anyone other than the bellwether plaintiffs; thus, the record does not yet contain any sort of analysis based upon Defendants' full production of the class database. App. 17 n.16. The District Court contemplated Marriott producing its NDS database to Plaintiffs' expert and said it could revisit Marriott's arguments if necessary. Accordingly, Marriott's Petition is premature.[3] As discovery ensues and litigation progresses, the District Court will continue to scrutinize ascertainability and may modify its order. *See Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 424 (2003) ("Our review is particularly deferential in a case like this—involving an interlocutory appeal of a conditional class certification.").[4]

Even if Marriott's arguments were not premature, the District Court's thorough, fact-bound analysis that damages are ascertainable on a common, class-wide basis was not manifestly erroneous. The cases Marriott's relies on are inapposite. This Court's decision in *EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) raised ascertainability issues simply not found here. In *EQT*, the classes included former and current gas estate owners. *Id.* at 359. But ownership of the gas

---

[3]    Since Marriott filed its Petition, the District Court held a status conference and issued a letter order on discovery the parties seek related to the Class. ECF 1033.

[4]    The District Court held that certification was not conditional, but the Court could revisit it. App. 18 n.7.

estates changed over 20 years and the schedules were not updated to account for ownership changes. Due to the inherent nature of deeds, ownership could only be determined by the construction of deeds and ascertaining the grantor's intent. *Id.* Noting that the district court glossed over this problem, the Fourth Circuit held that the district court abused its discretion in failing to rigorously analyze whether heirship, intestacy and title-defects posed an administrative barrier to ascertaining the ownership classes. *Id.* at 358-359. In *EQT*, as opposed to the straightforward analysis the trial court was able to apply here, the district court failed to rigorously analyze whether ascertaining class membership was feasible.

*Spotswood v. Hertz Corp.*, No. CV 16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019), is also distinguishable and does not support immediate review. In *Spotswood*, the inquiry did not involve whether class members were charged for reservations; rather, the issue was whether Hertz had charged fees for administrative purposes, loss of use fees, and diminished value to class members who had made reservations and then had auto accidents. *Id.* The district court found that plaintiff "glossed over" complications and failed to demonstrate how the classes could be ascertained. *Id.* at *8; *see also Chado v. Nat'l Auto Inspections, LLC*, No. CV 17-2945, 2019 WL 1981042 (D. Md. May 3, 2019) (court redefined the class thus satisfying Rule 23's ascertainability requirement).

The facts on which these cases are decided belie the notion that "error is seeping into the Fourth Circuit courts" as Marriott claims. App. 20. Instead, as Plaintiffs agree, the District Court must conduct a rigorous factual analysis of ascertainability. The District Court did just that in its opinion when it devoted seven pages of its opinion to a factual analysis of class membership. App. 11-18. The District Court's analysis was not manifestly erroneous, and it would be premature to review the District Court's opinion at this juncture.

**IV.     The District Court's Order complies with *Daubert* and *Comcast* and does not reflect a substantial weakness or manifest error.**

The District Court's finding that Plaintiffs' overpayment theory of damages is capable of measurement on a classwide basis does not reflect a substantial weakness or manifest error. In denying Defendants' motion to exclude Plaintiffs' expert's (Dr. Jeffrey Prince) proposed methodology for measuring the "overpayment" damages suffered by class members, the District Court scrupulously applied *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The District Court performed its gatekeeping function with a probing, detailed examination of Dr. Prince's proposed methods, including a seven-hour hearing where both sides' experts explained their arguments directly to the Court. Thus, the District Court complied with the requirements of both *Daubert* and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Moreover, Marriott's argument is once again premature as the District Court's opinion explicitly contemplated that: (1) Marriott will eventually produce its NDS database to Dr. Prince; (2) Dr. Prince will deploy his damages model for all class members; (3) Dr. Prince will submit a supplemental report; (4) Marriott will depose him; (5) Marriott's expert will submit her own supplemental report; (6) Plaintiffs will depose her; and (7) the Court will consider whether to de-certify the classes. It would be far more appropriate to consider intermediate review *after* the seven steps above occur. *See In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002) ("[A]n indication that the District Court will reexamine the certification decision following discovery should discourage an interlocutory appeal."). "Importantly, '[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 961 (4th Cir. 2020) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)) (emphasis supplied by *McKiver*).

Notably, Marriott itself refused to produce its full NDS database until after class certification. Thus, the necessary steps that the Court outlined are a product of Marriott's own litigation choices. Dr. Prince's proposed methodology and any bases for appellate review can be more fairly analyzed by both the District Court and this

Court after Dr. Prince is given access to the full set of relevant data in Marriott's possession.[5]

### A. Marriott has not shown Dr. Prince's proposed methodology violates *Comcast* or is unreliable under *Daubert*.

Even if appellate review were not premature, Marriott's arguments about Dr. Prince's damages model fail under *Comcast*. *Comcast* requires that "a model purporting to serve as evidence of damages" must measure damages by following the same theory of harm "accepted for class-action treatment" by the District Court. *Comcast*, 569 U.S. at 35. The District Court here found that Dr. Prince's model complied with *Comcast* because it was consistent with Plaintiffs' "overpayment theory of harm" and "only measures the amount the class members overpaid pursuant to that theory." App. 51.[6]

---

[5]    Moreover, appellate review is premature given the unsettled nature of the District Court's order related to the inherent value model of damages. While the District Court rejected Plaintiffs' expert's inherent value model, it indicated that it would entertain additional discovery of Marriott's own valuation of class members' personal information. ECF No. 1033. Following a status conference where the Court indicated it would be inclined to give Plaintiffs some discovery, the parties are currently briefing exactly what discovery Plaintiffs will be able to obtain. Once that discovery is obtained, Plaintiffs may move for certification for the damages classes that rely on the inherent value model of damages.

[6]    Dr. Prince's model builds off the findings of another expert witness for Plaintiffs, Sarah Butler, whose expert conjoint analysis established the first step of the "overpayment" theory by showing that, had consumers known the truth about Marriott's inadequate data security practices, a statistically significant reduction in demand for Marriott's hotel rooms would result. *See* App. 87-88, 92. Defendants did

Marriott does not make a showing that the District Court's observation was incorrect or that Dr. Prince's theory does not indeed match the overpayment theory of harm relied upon by the certified classes; accordingly, Marriott's Petition fails to demonstrate that the District Court violated *Comcast*. Marriott's argument is a more general challenge to the District Court's decision not to exclude Dr. Prince's methodology under *Daubert*. *See* Pet. at 22-24. But this argument does not support granting the Petition.

"A trial court has 'considerable leeway in deciding in a particular case *how* to go about determining whether particular expert testimony is reliable.'" *McKiver*, 980 F.3d at 961 (quoting *Kumho Tire*, 526 U.S. at 152) (emphasis in *Kumho*)). "*Daubert* is a flexible test and no single factor, even testing, is dispositive." *Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (4th Cir. 2017).

The essence of Marriott's argument boils down to its contention that Dr. Prince is wrong in believing that—when calculating how much class members may have overpaid at a given hotel—it is not necessary to run a comparison of the prices of Marriott "focal hotels" and local competitors *for every day* in the class period because, *in general*, hotels that compete with one another will adjust their prices from time to time "in a correlated way"—a concept referred to as "the co-movement

---

not move to exclude Ms. Butler's report (App. 87, n.9), and Marriott does not mention her report in its Petition.

theory." App. 94; *see also* Pet. at 22-23 (revealing that Marriott's argument is primarily about the co-movement theory assumption).

Marriott's complaint about the co-movement theory falls short of identifying any error or abuse of discretion by the District Court. To start, Marriott misrepresents several facts about Dr. Prince's proposed methodology and overstates the significance of the criticisms leveled by Marriott's expert. First, contrary to Marriott's assertion (Pet. at 22), it *was not* Dr. Prince's position that the ultimate iteration of his model would necessarily be run using just a single date for each market, and the District Court correctly rejected Marriott's effort to misstate that aspect of his opinion. App. 93 ("But it mischaracterizes Dr. Prince's position to insist, as Defendants do, that his belief that he only needed to test each focal hotel's competitive market a single time was immutable. To the contrary, he clearly stated … that it might be necessary to run the model more than once for each market, but he would need the full NDS database in order to determine this.").

Second, Marriott's criticism that Dr. Prince did not test his model fails because he tested his model *twice* (for purposes of showing the model could work formulaically), using the limited NDS discovery that Marriott has produced to date. App. 51, 88-89, 95. Dr. Prince's demonstrations of his model satisfy *Daubert*, but more importantly, do not reflect the "final" calibration of the model as he only tested his model for the bellwether plaintiffs' stays. *See* App. 51 (noting "it would have

been impossible" for Dr. Prince to perform "precise calculations" without access to the full NDS database).

Marriott's expert's attacks on Dr. Prince's tests—which Marriott incorrectly contends "proved" that the assumption of co-movement is false (Pet. at 23-24)— were premature and deserved the limited weight given to them by the District Court. *See* App. 78, 95 (Dr. Tucker's critiques were not dispositive because Dr. Prince's reports had to be written without access to the actual NDS information that he will be able to use in the future). That a defendant's expert disagrees with the validity of one assumption in a plaintiff's expert report does not make it conclusively unreliable. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013) ("The District Court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

Finally, the evidence supporting Dr. Prince's reasonable belief that Marriott and competing hotels adjust their prices relative to each other in a measurable way extends beyond one academic paper, as Marriott claims. Pet. at 23. In developing his model, Dr. Prince also relied on detailed evidence regarding the actual tool *used by Marriott's own hotel managers* to factor in competitor prices when setting room rates, and he attempted to replicate the process followed by that tool. App. 90. The phenomenon of price co-movement within the hotel industry is therefore supported

by both academic literature and actual evidence regarding *how Marriott itself behaves. Id.* In the face of that foundation, Marriott's implicit suggestions that hotel price co-movement does not exist or that its effects cannot be reasonably built into a final damage calculation methodology in this case are both significantly more far-fetched than Dr. Prince's opinions.

The District Court did not violate *Comcast*, it did not ignore *Daubert*'s requirements, and it acted fully within its discretion in determining that Dr. Prince's proposed methodology was sufficiently reliable to support class certification at this point in the proceedings.

## V.     Defendants failed to identify a manifest error or substantial weakness in the District Court's limited issue class certification order error.

Plaintiffs incorporate their arguments about the appropriate use of Rule 23(c)(4) from their opposition to Defendant Accenture's petition. The District Court appropriately used Rule 23(c)(4) to "promote the use of the class device and to reduce the range of disputed issues" in this complex multidistrict litigation. *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) (citation and quotation marks omitted). Defendants fail to meet their burden to demonstrate that the District Court's use of Rule 23(c)(4) was "manifest error," or contained a "substantial weakness," *Lienhart*, 255 F.3d 145. Defendants failed to find a single Supreme Court or circuit court decision standing for the proposition

that Rule 23(c)(4)'s utility should be narrowed in the way Defendants suggest. The

District Court properly certified issue-only negligence classes.

## <u>CONCLUSION</u>

For the reasons stated herein in and in opposition to Accenture's Rule 23(f)

Petition, Plaintiffs respectfully request that this Court deny Marriott's Petition.


Dated: June 14, 2022                    Respectfully Submitted,

                                        /s/ *MaryBeth V. Gibson*
                                        MaryBeth V. Gibson
                                        **The Finley Firm, P.C.**
                                        Piedmont Center
                                        3535 Piedmont Road
                                        Building 14, Suite 230
                                        Atlanta, GA 30305
                                        T: (404) 978-6971
                                        F: (404) 320-9978
                                        mgibson@thefinleyfirm.com

                                        *Counsel for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), Respondents, by and through their counsel of record, hereby certify that this Answer complies with the typevolume limitations of Fed. Rule App. P. 5(c) and 32(c)(2) because this brief contains 4861 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f). I further certify that this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Times New Roman, a proportionally-spaced, 14-point serif font.

Dated: June 14, 2022                    */s/ MaryBeth V. Gibson*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2022, I electronically filed the foregoing answer with the Clerk of Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

I also certify that on June 14, 2022, I caused a copy of the foregoing Answer to be delivered by e-mail upon the following:

### *Counsel for Defendant-Petitioner Marriott International, Inc.*

| | |
|---|---|
| Daniel R. Warren | Matthew S. Hellman |
| Lisa M. Ghannoum | Lindsey C. Harrison |
| Dante A. Marinucci | Zachary C. Schauf |
| Kyle T. Cutts | Kevin J. Kennedy |
| BAKER & HOSTETLER LLP | JENNER & BLOCK LLP |
| 127 Public Square | 1099 New York Avenue, NW |
| Suite 200 | Suite 900 |
| Cleveland, OH 44114 | Washington, DC 20001 |
| dwarren@bakerlaw.com | mhellman@jenner.com |

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW
Suite 200
Washington, DC 20036
gketeltas@bakerlaw.com

***Counsel for Defendant-Petitioner Accenture, LLP***

Craig S. Primis, P.C.
Erin N. Murphy
Devin S. Anderson
Emily M. Long
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
cprimis@kirkland.com

***Counsel for Amici Curiae***

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
aparrish@kslaw.com

Dated: June 14, 2022                    */s/ MaryBeth V. Gibson*

24

# Supplemental Appendix

**App.112**

BEFORE THE
UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MARRIOTT INTERNATIONAL, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2879 |

CONSOLIDATED RESPONSE BY DEFENDANTS MARRIOTT
INTERNATIONAL, INC., MARRIOTT HOTEL SERVICES, INC., AND
STARWOOD HOTELS & RESORTS WORLDWIDE, LLC

IN SUPPORT OF THE MOTIONS

BY PLAINTIFFS PERKINS AND TAPLING FOR THE TRANSFER AND
CONSOLIDATION OF ACTIONS IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND-SOUTHERN DIVISION
PURSUANT TO 28 U.S.C. § 1407

**App.113**

### Background

On November 30, 2018, Marriott International, Inc. announced a data security incident involving unauthorized access to the Starwood guest reservation database containing information relating to as many as 500 million guests.[1] As of December 21, 2018, at least 57 related putative class actions have been filed against Marriott in 12 federal district courts, and three related state actions have been or will be removed to federal court.[2] All the related actions name Marriott International as a defendant, while some also name its subsidiaries Marriott Hotel Services, and Starwood Hotels & Resorts Worldwide, which Marriott acquired in 2016 (collectively, these defendants will be referred to as "Marriott").

All but one of the related actions purport to assert claims on behalf of Marriott customers.[3] They allege Marriott failed to safeguard guest information from unauthorized access in violation of consumer protection statutes, contracts, and common law duties. The remaining related action is brought by a financial institution that alleges it and other financial institutions

---

[1] *See* Press Release, Marriott, Marriott Announces Starwood Guest Reservation Database Security Incident (Nov. 30, 2018), *available at* http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/.

[2] *Johnson, et al. v. Marriott*, 3:18-cv-02119 (D. Or.), and *Silver, et al. v. Marriott, et al.,* 2:18-cv-10390 (C.D. Cal.), were removed on December 10 and December 14, 2018. *Thompson, et al. v. Marriott*, 460009V (Cir. Court Montgomery County, MD) was filed on December 12, 2018 and will be removed promptly.

[3] Most of the related actions are identified in the Schedules of Actions submitted with Perkin's Motion (Doc. 1-2), Tapling's Motion (Doc. 4-2), and subsequent Notices of Related Actions (Docs. 9-1, 11, 14-1, 16, 23, 26). Attached as Exhibit A, is a chart providing notice of potential tag-along actions for which the Panel has not yet received notice, along with a list of previously identified related cases, and previously identified unrelated cases. *See* J.P.M.L. Rule 6.2(d).

were injured because they may incur costs to reissue customer bank cards for accounts potentially affected by the same alleged failure to safeguard guest information.[4]

On December 3, 2018, plaintiff Perkins moved the Panel to transfer to, and consolidate all related actions and tag-along actions in, the District of Maryland. Plaintiff Tapling moved the Panel for the same relief and plaintiff Elliot supported these motions.[5] Marriott agrees that the related cases arising out of the Marriott security incident should be centralized in the District of Maryland (Greenbelt) under 28 U.S.C. § 1407. The related actions all arise out of, and share fact questions concerning, the same data security incident. All plaintiffs allege Marriott failed to protect guest information. In addition to overlapping factual questions, the customer cases bring the same or similar claims on behalf of overlapping nationwide or statewide putative classes.

Consolidation of the related lawsuits and anticipated tag-along actions is necessary to prevent duplicative discovery and inconsistent pretrial rulings and will promote the just and efficient control of these numerous actions. The District of Maryland (Greenbelt) is the appropriate transferee court because Marriott is headquartered there, relevant witnesses and documents likely will be found there, and at least 34 of the actions have been filed there –

---

[4] However, Marriott notes there is a securities class action, styled *McGrath, et al. v. Marriott, et al.*, 1:18-cv-06845, pending in the Eastern District of New York that was identified as related in Tapling's Motion (Doc 4-2). Marriott does not believe the *McGrath* action is "related" to the pending consumer and bank actions. *See* 28 U.S.C. § 1407 (providing that actions must share "common questions of fact" to be transferred and consolidated). The *McGrath* complaint claims two violations of the Exchange Act on the theory that Defendants' SEC filings allegedly misled investors with regard to Marriott's data systems. *McGrath* focuses on statements in SEC filings over the past three years, compliance with provisions of the Exchange Act, and alleged damages in connection with Marriott securities transactions. Further, the *McGrath* action will be subject to the procedures of the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737. In at least one analogous situation, the Panel declined to include securities claims in the same MDL proceeding as tort and property damage claims in connection with the Deepwater Horizon disaster. *See In re BP p.l.c. Securities Litigation*, 734 F.Supp.2d 1376, 1378 (J.P.M.L. 2010).

[5] MDL No. 2879, Docs. 1, 4, 8.

significantly more than in any other district. Counsel for Marriott conferred with many of the counsel who filed related actions; most, if not all, support consolidation, and the majority favor consolidation in the District of Maryland. This effort by Marriott counsel also confirmed the burdens and challenges that would impede any attempt to coordinate informally the related actions without the benefit of consolidation.

Argument

Under 28 U.S.C. § 1407, the Panel is empowered to transfer actions involving common factual questions to any district for coordinated or consolidated pretrial proceedings when such transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient control of such actions." The Panel generally orders transfer and consolidation to eliminate duplicative discovery, avoid conflicting rulings, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts.[6] These factors strongly favor transfer and consolidation of related and tag-along actions in the District of Maryland (Greenbelt).

### A.    Transfer of the related actions for consolidated proceedings will promote just and efficient control of the actions.

Where actions "arise from a common factual core," transfer and consolidation is appropriate even in "the presence of additional facts or legal theories."[7] The related complaints here present common fact questions concerning the same data security incident and the adequacy of Marriott's efforts to protect guest information. The Panel consistently has determined that

---

[6] *See In re Blue Cross Blue Shield Antitrust Litigation*, 908 F.Supp.2d 1373, 1376 (J.P.M.L. 2012); *see also Manual for Complex Litigation, Fourth* § 20.131.

[7] *Blue Cross Blue Shield*, 908 F.Supp.2d at 1376; *see also In re Home Depot, Inc. Customer Data Security Breach Litigation*, 65 F.Supp.3d 1398, 1399 (J.P.M.L. 2014).

actions arising out of the same cybersecurity incident present common fact questions.[8] This is true even when actions are brought by different categories of plaintiffs, like consumers and banks. For example, the Panel recognized that actions against Home Depot were related because, "whether brought by consumers or by financial institutions, [they] arise from the same common factual core – namely, the Home Depot data breach."[9]

The Panel has also recognized that consolidation of claims arising out of cybersecurity incidents is appropriate because it will "eliminate duplicative discovery."[10] Transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery…and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary."[11] Because the complaints for all the related actions share the same core factual allegations and assert similar legal claims, "[c]entralization will eliminate duplicative discovery" that "may be quite technical and contentious" and will "conserve the resources of the parties, their counsel, and the judiciary."[12]

---

[8] *See, e.g., In re Equifax, Inc.*, 289 F.Supp.3d 1322, 1324-25 (J.P.M.L. 2017); *In re Community Health Systems, Inc., Customer Sec. Data Breach Litigation*, 84 F.Supp.3d 1362, 1363 (J.P.M.L. 2015); *In re Zappos.com, Inc., Customer Data Security Breach Litigation*, 867 F.Supp.2d 1357, 1358 (J.P.M.L. 2012); *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 802 F.Supp.2d 1370, 1371 (J.P.M.L. 2011).

[9] *Home Depot*, 65 F.Supp.3d at 1399. *Accord In re Target Corp. Customer Data Sec. Breach Litigation*, 11 F. Supp.3d 1338(Mem) (J.P.M.L. 2014).

[10] *Equifax, Inc.*, 289 F.Supp.3d at 1325. *Accord Community Health*, 84 F.Supp.3d at 1362; *Zappos.com*, 867 F.Supp.2d at 1358; *Home Depot*, 65 F.Supp.3d at 1399; *Target Corp.*, 11 F.Supp.3d at 1338.

[11] *In re Resource Exploration, Inc., Securities Litigation*, 483 F.Supp.817, 821 (J.P.M.L. 1980).

[12] *In re Supervalu, Inc., Customer Data Sec. Breach Litigation*, 67 F.Supp.3d 1377, 1378 (Mem) (J.P.M.L. 2014).

Transfer and consolidation also will avoid the risk of inconsistent pretrial rulings. The "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts."[13] The risk of inconsistent pretrial rulings is exceptionally high here. Each of the related actions seeks to certify nationwide or statewide classes based on complaints asserting the same or similar claims. Inconsistent rulings on dispositive motions, class certification, or other important issues – for example the scope of discovery and whether requests are relevant and proportional – would seriously threaten just and efficient control of the actions. The Panel repeatedly has found that the risk of "inconsistent pretrial rulings on class certification and other issues" supports consolidation in cybersecurity litigation.[14]

Consolidating the related actions at this stage will eliminate the risk of inconsistent rulings and duplicative efforts of transferor and transferee courts because none of the related actions has "progressed beyond the filing of the complaints."[15] All related actions were filed within the last few weeks, and Marriott has not yet responded. Marriott is in the process of seeking to suspend or stay proceedings in related actions pending this Panel's determination on consolidation, and the plaintiffs in many of these cases have already agreed to suspension.

Separately litigating each of the 59 related actions, plus additional tag-alongs, offers no benefit and will inevitably heighten the duplication, complexity, and burdens of these matters

---

[13] *In re Multidistrict Private Civil Treble Damage Litigation Involving Plumbing Fixtures*, 308 F.Supp.242, 244 (J.P.M.L. 1970).

[14] *See, e.g.*, *Community Health*, 84 F.Supp.3d at 1362; *see also Supervalu*, 67 F.Supp.3d at 1378; *Home Depot,* 65 F.Supp.3d at 1399; *Zappos.com,* 867 F.Supp.2d at 1358.

[15] *In re Electronic Books Antitrust Litigation*, 846 F.Supp.2d 1378, 1379 (J.P.M.L. 2011).

for all stakeholders. In accordance with its prior rulings involving multiple lawsuits arising from a single cybersecurity event, the Panel should order transfer and consolidation of related cases and tag-alongs here.

### B. The District of Maryland (Greenbelt) is the appropriate transferee forum.

The District of Maryland (Greenbelt) is the appropriate transferee forum based on factors traditionally considered by the Panel, including (1) connection to the litigation, (2) convenience of the parties, (3) location of the witnesses and evidence, and (4) the number of cases pending in the jurisdiction, as well as the experience, skill, and caseloads of the available judges.[16]

First, Marriott's headquarter offices are in the District.[17] In other matters arising out of cybersecurity incidents, the Panel has consistently determined that the district where the defendant's headquarters are located has the strongest connection to the litigation and is the appropriate transferee forum. By way of example, this was a major factor in the Panel's decisions to transfer the Home Depot litigation to the Northern District of Georgia,[18] the Target litigation to the District of Minnesota,[19] the Zappos litigation to the District of Nevada,[20] and the Schnuck Markets litigation to the Eastern District of Missouri.[21] This makes sense given that

---

[16] *See, e.g., In re Lipitor (No. II)*, 997 F.Supp.2d 1354, 1357 (J.P.M.L. 2014); *In re Tri-State Crematory Litigation*, 206 F.Supp.2d 1376, 1378 (J.P.M.L. 2002).

[17] *See* Katie Arcieri, *Why Maryland was Never Going to Lose Marriott*, WASH. BUS. J., Jun. 21, 2018, *available at* https://www.bizjournals.com/washington/news/2018/06/21/why-maryland-was-never-going-to-lose-marriott.html.

[18] *Home Depot*, 65 F.Supp.3d at 1399.

[19] *Target*, 11 F.Supp.3d at 1339.

[20] *Zappos.com*, 867 F.Supp.2d at 1358.

[21] *In re: Schnuck Markets, Inc. Customer Data Sec. Breach Litigation*, 978 F.Supp.2d 1379, 1381-82 (J.P.M.L. 2013).

"relevant documents and witnesses are likely to be located" at a party's headquarters.[22] By contrast, plaintiffs and putative class members in these cases are spread throughout the country. Thus, there is no overarching connection between plaintiffs, or the classes they claim to represent, and any particular district. In sum, no district comes close to being as strongly connected to the parties and the related actions as the District of Maryland, where Marriott is headquartered.

Second, the strong connection between the District of Maryland and the related actions is also evidenced by the fact that eight of the first ten actions and, over half of the total, were filed in the District of Maryland – significantly more than in any other District. In both *Home Depot* and *Target*, numbers like these contributed to the Panel's selection of the appropriate transferee district.[23]

Third, the District of Maryland is centrally located and relatively convenient for the parties. Not only is Marriott headquartered near the Greenbelt courthouse, but at least 30 of the law firms that represent the plaintiffs have offices in the Washington-Baltimore metropolitan area. Moreover, the parties, witnesses, and counsel who reside outside the Washington-Baltimore metropolitan area will have access to the Greenbelt courthouse through three nearby, well-connected international airports (BWI, Dulles, and Reagan National), as well as AMTRAK and other regional rail lines that service the area. The Panel frequently considers whether a transferee district is "easily accessible and relatively centrally located" when deciding where to consolidate litigation.[24]

---

[22] *Supervalu*, 67 F.Supp.3d at 1378. *See also Sony Gaming Networks*, 802 F.Supp.2d at 1371.

[23] *See Home Depot*, 65 F.Supp.3d at 1399; *Target*, 11 F.Supp.3d at 1339.

[24] *Target*, 11 F.Supp.3d at 1339; *see also In re Method of Processing Ethanol Byproducts and Related Subsystems*, 730 F.Supp.2d 1379 (J.P.M.L. 2010).

Fourth, the District of Maryland is also appropriate because it has the capacity to administer this case. According to the September 2018 publication of the Federal Court Management Statistics, the average federal judge has a pending caseload of 688 actions whereas the average judge in the District of Maryland has 516 pending actions.[25] Moreover, there currently is only one active MDL pending in the District of Maryland, and none before a judge who resides in the Greenbelt courthouse.[26] This factor also favors transfer and consolidation under Section 1407.[27]

Thus, every one of the factors typically considered by the Panel strongly supports the District of Maryland (Greenbelt), and considering all of them together confirms that this District is the most appropriate forum for consolidating these actions. Marriott disagrees with plaintiff Perkins and plaintiff Crabtree that the District of Massachusetts or the Northern District of California would be appropriate alternative venues.[28] Neither district would satisfy any of the factors typically considered by the Panel:  Marriott is not headquartered there, no witnesses or documents are expected to be found there; only one counsel in any related action is located in either district; and only one related action have been filed in each district.

---

[25] U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (Dec. 20, 2018), *available at* *http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf*.

[26] *See* MDL Statistics Report – Distribution of Pending MDL Dockets (Dec. 17, 2018), *available at* *https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-17-2018.pdf*.

[27] *See*, *e.g.*, *In re Corn Derivatives Antitrust Litigation,* 486 F.Supp. 929, 932 (J.P.M.L. 1980); *In re Teflon Products Liability Litigation*, 416 F.Supp.2d 1364, 1365 (J.P.M.L. 2006).

[28] Doc. 1-1 at 10; Doc. 78 at 1.

Finally, while some plaintiffs have suggested assignment to a specific judge, Marriott expects that any of the judges in the District of Maryland (Greenbelt) assigned by the Panel would be capable of efficiently and effectively managing this MDL.

### C.    Attempting to achieve consolidation under Section 1404 is not practical here.

Marriott recognizes that "centralization under Section 1407 should be the last solution after considered review of all other options."[29] As the Panel has held, "where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization."[30] Marriott further recognizes that Section 1404 transfers may, under certain circumstances, be a practical method of consolidating related cases where "only a minimal number of actions are involved[.]"[31]

But the Panel has not required parties to resort to Section 1404 where the number of cases, law firms, plaintiffs, and districts involved are as great as they are here.  In *In re Roundup Products Liability Litigation*, for example, the Panel concluded that "informal coordination among the involved courts and counsel is not practicable" because the matter involved "thirty-seven actions pending in twenty-one districts" with "[m]ore than ten different law firms represent[ing] plaintiffs . . . spread across the country."  The JPML reasoned that "[e]ven if no

---

[29] *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litigation*, 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011).

[30] *In re 3M Company Lava Ultimate Products Liability Litigation*, 222 F.Supp.3d 1347, 1347-48 (J.P.M.L. 2016).

[31] *See In re: Transocean Ltd. Sec. Litigation (No. II)*, 753 F.Supp.2d 1373, 1374 (J.P.M.L. 2010).

**App.122**

additional actions are filed, the present number of cases, districts, and involved counsel, as well

as the complexity of the issues presented, warrants centralization."[32]

Clearly, in this case, where there are well over 50 related actions filed by many law firms

in a dozen districts across the country, transfer and consolidation under Section 1407 represents

the only practical method of managing the litigation and avoiding inconsistent results.

**Conclusion**

The motions to transfer and consolidate should be granted and the related actions, and

tag-along actions, should be transferred to the District of Maryland (Greenbelt) for consolidated

proceedings.

Dated: December 21, 2018                    Respectfully submitted,

/s/ Daniel R. Warren
_____

Daniel R. Warren
dwarren@bakerlaw.com
Baker Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7145

*Attorney for Marriott International, Inc.,*
*Marriott Hotel Services, Inc., and Starwood*
*Hotels & Resorts Worldwide, LLC*

---

[32] 214 F.Supp.3d 1346, 1348 (J.P.M.L. 2016).